EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hon. Miguel A. Romero Lugo, actual Senador del Distrito I de San Juan y como Alcalde Electo del Municipio de San Juan<br><br>    Peticionario<br><br><br>       v.<br><br><br>    Hon. Carmen Yulín Cruz Soto como Alcaldesa Saliente del Municipio de San Juan<br><br>    Recurrida<br><br>Manuel Natal Albelo, como candidato a la Alcaldía del Municipio de San Juan<br><br>    Parte interventora<br>_____<br><br>Olvin A. Valentín Rivera, como Comisionado Electoral del Partido Movimiento Victoria Ciudadana<br><br>    Peticionario<br><br><br>       v.<br><br>Comisión Estatal de Elecciones, a través de su Presidente, Francisco J. Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Héctor J. Sánchez Álvarez, como Comisionado Electoral del Partido Nuevo Progresista; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; y, Juan Frontera Frau, como Comisionado Electoral del Partido Proyecto Dignidad<br><br>    Peticionados | Certificación Intrajurisdiccional<br><br>2020 TSPR 143<br><br>205 DPR _____ |

Número del Caso:  CT-2020-26
                 CT-2020-27


Fecha:  25 de noviembre de 2020

**CT-2020-26**

Abogados de la parte peticionaria:

    Lcdo. Eliezer Aldarondo Ortiz
    Lcda. Rosa Campos Silva
    Lcdo. Carlos Santiago Tavarez
    Lcdo. Simone Cataldi Malpica


Abogados de la parte recurrida:

    Lcdo. Frank Torres Viada
    Lcda. Alexandra Rivera Ríos
    Lcdo. Raúl S. Mariani Franco


Abogados de la parte interventora:

    Lcdo. Filex E. Rosado Rodríguez
    Lcdo. Jorge Farinacci Fernós

**CT-2020-27**

Abogados de la parte peticionaria:

    Lcdo. Manuel A. Rodríguez Banchs
    Lcda. María E. Suarez Santos

Abogados de los peticionados:

    **Comisión Estatal de Elecciones**
    Lcdo. Jason Caraballo Oquendo
    Lcdo. José Feliciano Ramos
    Lcdo. Manuel Fernandez Mejías

    **Comisionado Electoral**
    **Partido Independentista Puertorriqueño**
    Lcdo. Juan Manuel Mercado Nieves


    **Comisionado Electoral**
    **Partido Nuevo Progresista**
    Lcdo. Francisco J. González Magaz
    Lcdo. Carlos E. Rivera Justiniano

    **Comisionado Electoral**
    **Partido Popular Democrático**
    Lcdo. Jorge Martínez Luciano
    Lcdo. Emil Rodríguez Escudero

Materia: Derecho Electoral: La Comisión Estatal de Elecciones está facultada para emitir certificaciones de los resultados preliminares de un evento electoral, al amparo del Código Electoral de Puerto Rico de 2020.
El Art. 2.001 de la Ley Núm. 107-2020, conocida como el Código Municipal de Puerto Rico, impone a todo alcalde incumbente el deber ministerial de comenzar un proceso de transición municipal

el decimoquinto día después de celebrarse unas Elecciones Generales cuando de la certificación de resultados preliminares que emita la Comisión Estatal de Elecciones surja que otro candidato se proyecta como aquel potencialmente electo.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Hon. Miguel A. Romero Lugo, actual Senador del Distrito I de San Juan y como Alcalde Electo del Municipio de San Juan<br><br>Peticionario<br><br>v.<br><br>Hon. Carmen Yulín Cruz Soto como Alcaldesa Saliente del Municipio de San Juan<br><br>Recurrida<br><br>Manuel Natal Albelo, como candidato a la Alcaldía del Municipio de San Juan<br><br>Parte interventora<br>―――――――――――――――――<br>Olvin A. Valentín Rivera, como Comisionado Electoral del Partido Movimiento Victoria Ciudadana<br><br>Peticionario<br><br>v.<br><br>Comisión Estatal de Elecciones, a través de su Presidente, Francisco J. Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Héctor J. Sánchez Álvarez, como Comisionado Electoral del Partido Nuevo Progresista; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; y, Juan Frontera Frau, como Comisionado Electoral del Partido Proyecto Dignidad<br><br>Peticionados | CT-2020-26 cons. con CT-2020-27 | *Certificación Intrajurisdiccional* |

La Jueza Presidenta Oronoz Rodríguez emitió la Opinión del Tribunal
En San Juan, Puerto Rico, a 25 de noviembre de 2020.

Nuevamente nos corresponde resolver y aclarar la normativa aplicable a una serie de controversias derivadas del evento eleccionario que tuvo lugar el pasado 3 de noviembre de 2020. En esta ocasión, corresponde expresarnos sobre la validez de una certificación sobre los resultados preliminares que emitió la Comisión Estatal de Elecciones (CEE) el 7 de noviembre de 2020. Además, debemos determinar si, a la luz de una certificación de esa índole, un alcalde incumbente que no resultó reelecto tiene el deber ministerial de proseguir con el proceso de transición que preceptúa el Artículo 2.001 de la Ley Núm. 107-2020, infra, junto con el candidato que se proyecta como potencialmente electo.

Por las razones que exponemos más adelante, sostenemos la validez de la certificación en controversia. Como resultado, resolvemos que la alcaldesa incumbente de San Juan tenía el deber ministerial de -a partir del 18 de noviembre de 2020- proseguir con el proceso de transición del Municipio de San Juan. Esto tenía que hacerlo junto con el candidato potencialmente electo al cargo de alcalde, a saber, el Hon. Miguel A. Romero Lugo. En consecuencia, ordenamos a la alcaldesa incumbente a cumplir su deber ministerial y dar curso de inmediato a los procesos transicionales municipales en conjunción con el señor Romero Lugo.

I

A raíz de las Elecciones Generales que se celebraron el

3 de noviembre de 2020, la CEE emitió una *Certificación* el 7 de noviembre de 2020 relacionada con el cargo de alcalde del Municipio de San Juan intitulada *Resultado Preliminar de las Elecciones Generales 3 de noviembre 2020* (Certificación). Mediante esta, la CEE certificó los resultados preliminares de los comicios para ese cargo. De la Certificación surgía que el candidato bajo la insignia del Partido Nuevo Progresista, Hon. Miguel A. Romero Lugo (señor Romero Lugo), llevaba la delantera con 44,313 votos, lo cual representaba un 36.22% de los votos escrutados. El candidato en la segunda posición era el Hon. Manuel Natal Albelo (señor Natal Albelo), candidato bajo la insignia del partido Movimiento Victoria Ciudadana (MVC) con 42,081 votos, los cuales correspondían al 34.40% de los votos escrutados. La Certificación señalaba que esta se emitía con un 100.00% de los colegios electorales escrutados, pero las papeletas protestadas y no adjudicadas, las no contadas y las de los electores añadidos a mano serían objeto de revisión y adjudicación durante el Escrutinio General. Además, indicaba que esta no conllevaba la certificación formal o informal de ningún candidato, sino que ello tendría lugar luego de que se efectuara el Escrutinio General o el Recuento que establece el Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020 (Código Electoral de 2020 o Código Electoral vigente). El Lcdo. Olvin A. Valentín Rivera, Comisionado Electoral del MVC, impugnó la validez de esa Certificación ante la CEE. Solicitó además que se dejara sin efecto toda otra certificación preliminar

que emitiera la CEE. Por no existir un acuerdo entre los Comisionados Electorales en torno a ese asunto, el Presidente de la CEE, Hon. Francisco Rosado Colomer, emitió la Resolución CEE-RS-20-166 el 12 de noviembre de 2020, notificada al día siguiente, mediante la cual determinó que la Certificación impugnada era válida. En síntesis, fundamentó su determinación en la facultad que tiene la CEE de emitir certificaciones de conformidad con el Código Electoral de 2020. A su vez, dispuso que, como cuestión de necesidad, se le requiere emitir certificaciones preliminares, pues dependen de ello para comenzar o realizar determinaciones sobre sus procesos. Así, por ejemplo, expresó que esa Certificación tiene el propósito de darle comienzo al Escrutinio General y determinar si procede, o no, un recuento. Como resultado, concluyó que la Certificación en controversia cumple con lo establecido en el Código Electoral de 2020, así como todas las Certificaciones de Resultados Parciales que emitió la CEE para propósitos de las elecciones generales de 2020.[1]

En desacuerdo, el 22 de noviembre de 2020 el Comisionado Electoral de MVC, presentó un recurso de revisión judicial ante el Tribunal de Primera Instancia.[2] En el recurso el Comisionado Electoral de MVC argumentó que la Certificación en controversia se emitió de forma ilegal

---

[1] *In re: Impugnación de certificación de resultado preliminar de las elecciones generales – Alcalde de San Juan y otras candidaturas*, CEE-RS-20-166, Apéndice del recurso de certificación que presentó el Hon. Miguel A. Romero Lugo, pág. 22.

[2] Ante ese foro, el caso fue identificado como <u>Valentín Rivera v. CEE y otros</u>, con el alfanumérico SJ2020CV06285.

y *ultra vires*. Específicamente, argumentó que, bajo el Código Electoral de 2020, una certificación preliminar tiene un propósito meramente informativo. Así, adujo que la CEE no tenía facultad para declarar electo a ningún candidato hasta tanto concluyera el escrutinio. Añadió que el proceso de escrutinio no ha concluido, por lo que la Certificación no tiene base legal alguna. En apoyo a su contención, argumentó que, según el Código Electoral vigente, la definición provista para "*Certificación de Elección*", excluye explícitamente una certificación preliminar.

De manera paralela, el 9 de noviembre de 2020 el señor Romero Lugo le remitió una carta a la alcaldesa de San Juan, Hon. Carmen Yulín Cruz Soto (alcaldesa Cruz Soto), relacionada con el proceso de transición de la administración municipal. Específicamente, le notificó quién sería el Presidente de su Comité de Transición Entrante y le exhortó a que se comunicara con este para coordinar los trámites correspondientes al proceso de transición. Ante la falta de respuesta, el 18 de noviembre de 2020, el señor Romero Lugo le remitió una segunda comunicación escrita a la alcaldesa Cruz Soto. Nuevamente, reiteró su propósito de coordinar y dar comienzo a los trabajos de transición. En esta segunda ocasión, tampoco obtuvo una respuesta.

Así las cosas, el 20 de noviembre de 2020 el señor Romero Lugo presentó una *Petición de mandamus* en el Tribunal de Primera Instancia contra la alcaldesa Cruz

Soto.[3] Invocó como base legal el Artículo 2.001 de la Ley Núm. 107 de 2020, conocida como Código Municipal de Puerto Rico, _infra_. Sostuvo que esa disposición legal le impone a los alcaldes salientes la obligación y el deber ministerial de participar del proceso de transición junto con el Alcalde Entrante. Expresó que, de conformidad con el Código Municipal de Puerto Rico, ese proceso debía comenzar el decimoquinto día luego de las Elecciones Generales. Resaltó, además, que en virtud de la Certificación emitida por la CEE el pasado 7 de noviembre de 2020, él era el Alcalde Electo del Municipio. En consecuencia, argumentó que como la alcaldesa Cruz Soto no fue reelecta, la creación y constitución del Comité de Transición Saliente se activó automáticamente el 18 de noviembre de 2020. Indicó, además, que ese proceso debe concluir en o antes del 31 de diciembre del año eleccionario.

De otra parte, el señor Natal Albelo, presentó una solicitud de intervención. Argumentó que tenía un interés en el pleito como candidato a la alcaldía de San Juan. En síntesis, señaló que al no haberse certificado al ganador de la contienda pudiese ser él quien, en efecto, tenga derecho a participar del proceso de transición. Enfatizó que, en ausencia de una certificación oficial, no cabe hablar de un candidato electo legitimado para exigir y comenzar un proceso de transición.

Posteriormente, el señor Romero Lugo presentó el recurso de certificación intrajurisdiccional que nos ocupa.

---

[3] El caso se identificó como Hon. Miguel A. Romero Lugo v. Hon. Carmen Yulín Cruz, con el alfanumérico SJ2020CV06271.

En esencia, reprodujo los mismos argumentos que expuso ante el foro primario. Resaltó, además, que esperar a una certificación final para comenzar el proceso de transición que mandata el Código Municipal de Puerto Rico conduce a resultados irrazonables y perjudiciales. Acompañó a su recurso una *Moción urgente para que se paralicen los procedimientos en el tribunal instancia al amparo de la Regla 28(a) del Reglamento del Tribunal Supremo de Puerto Rico,* mediante la cual nos solicitó paralizar los procedimientos en el foro primario. Más adelante, presentó una *Segunda moción urgente en auxilio de jurisdicción, al amparo de la Regla 28(a) del Reglamento del Tribunal Supremo de Puerto Rico,* en la que solicitó que ordenáramos al Tribunal de Primera Instancia elevar los autos del caso <u>Valentín Rivera v. CEE y otros</u>, SJ2020CV06285, y consolidáramos ese caso con el recurso que presentó, por tener ambos un entronque y unas cuestiones de derecho comunes.

Por su parte, la alcaldesa Cruz Soto se opuso a la expedición del recurso de certificación. Argumentó, en síntesis, que el proceso de transición que establece el Código Municipal de Puerto Rico presupone la existencia de un Alcalde Electo. Adujo que el señor Romero Lugo no es el Alcalde Electo del Municipio de San Juan, pues no ha sido certificado como tal. Apuntó que, conforme al Código Electoral de 2020, la certificación de los ganadores no procede sino hasta después de culminado el Escrutinio General. Como resultado, añadió que como el escrutinio

general aún no ha finalizado, no cabe hablar de un Alcalde Electo. Así las cosas, resaltó que solo un Alcalde Electo tiene legitimación para solicitar el comienzo del proceso de transición. Reiteró, entonces, que la Certificación emitida por la CEE el 7 de noviembre de 2020, de sus propios términos, no tuvo el propósito, ni el alcance, de certificar al señor Romero Lugo como candidato electo para el puesto de alcalde de San Juan.

El 23 de noviembre de 2020, en virtud del Art. 3.002(f) de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24s(f), certificamos intrajurisdiccionalmente el caso Hon. Miguel A. Romero Lugo v. Hon. Carmen Yulín Cruz, SJ2020CV06271. En esa Resolución declaramos con lugar la solicitud de intervención que presentó el señor Natal Albelo. De igual forma, al amparo de la facultad que nos confiere esa disposición, así como el Art. 13.3 (4) del Código Electoral de 2020, certificamos *motu proprio* el caso Valentín Rivera v. CEE y otros, SJ2020CV06285. Les concedimos a las partes hasta el martes, 24 de noviembre de 2020, a las 5:00 p.m., para presentar sus alegatos y expresarse en torno a la consolidación de los casos.

En su alegato, la alcaldesa Cruz Soto reiteró los argumentos que esbozó en su oposición al recurso de certificación. Enfatizó, además, que el Código Electoral vigente establece que sus certificaciones o anuncios preliminares no constituyen un documento formal de certificación de elección. Así, pues, reiteró que es

requisito culminar el proceso de escrutinio aún en curso. De esa manera, resaltó que procede esperar que se emita una certificación final.

En su alegato, el señor Natal Albelo reiteró, en síntesis, los planteamientos que presentó en su solicitud de intervención. Indicó, además, que la Certificación que emitió la CEE carece de validez jurídica toda vez que la CEE no tiene facultad para emitir certificaciones preliminares. Arguyó que, en lo concerniente a esta controversia, el Código Electoral de 2020, reconoce solamente dos tipos de expresiones oficiales de la CEE: los anuncios de resultados parciales —que carecen de fuerza jurídica— y la Certificación del Resultado Final. Por ello, arguyó que la CEE carece de autoridad jurídica para emitir una certificación preliminar que tenga el efecto de comenzar el proceso de transición, según dispone el Código Municipal, infra. Argumentó lo anterior pues, hasta que no termine el Escrutinio General y se emita la Certificación del resultado final correspondiente, nadie puede ser declarado Alcalde Electo para propósitos del Art. 2.001 del Código Municipal, infra. Indicó, además, que los informes de transición contienen información confidencial y sensitiva que no se debe entregar a un candidato en la contienda, no adjudicada, a la Alcaldía del Municipio de San Juan.

A su vez, en su alegato el señor Romero Lugo, en esencia, sostuvo que la Certificación lo legitimaba a participar del proceso de transición municipal y solicitar

al tribunal que ordenara a la alcaldesa Cruz Soto a cumplir sus obligaciones en torno a ese proceso. Respecto al argumento de que la petición de *mandamus* no es justiciable, sostuvo que el deber ministerial de la Alcaldesa Saliente no se limita a nombrar a un Comité de Transición Saliente y preparar unos informes. Arguyó que, por el contrario, su deber conlleva rendir cuentas sobre la administración municipal, reunirse con el Comité de Transición Entrante, habilitar un espacio para celebrar las vistas y asignar el equipo y material necesario para poner en función el proceso de transición.

Por su parte, la CEE, a través de su Presidente, argumentó que la Certificación es resultado del ejercicio de las facultades estatutarias de la CEE y de su conocimiento especializado en materia electoral. Añadió que sirve de base para la activación de procesos inherentes al proceso de transición gubernamental ordenado por el Código Municipal de Puerto Rico. Adujo, además, que la Certificación expedida cumple y se emitió de conformidad con el Código Electoral vigente. Finalmente, sostuvo que no hay disposición alguna en el Código Electoral vigente que le impida emitir certificaciones de resultados preliminares. Por el contrario, señaló que existen mandatos de ley, adicionales a las del Código Electoral, que también la requieren.

El Comisionado Electoral de MVC reiteró, en esencia, los argumentos que reprodujo ante el Tribunal de Primera Instancia. En particular, argumentó que el Código Electoral

de 2020 no faculta a la CEE a certificar resultados preliminares de una Elección. Como resultado, adujo que la Certificación en controversia, se emitió de forma incorrecta e ilegal. Por ello, nos solicita su revocación.

De otra parte, el Comisionado Electoral del Partido Popular Democrático (PPD), en resumen, argumentó que el Código Electoral de 2020 no autoriza a la CEE a emitir certificaciones preliminares de elección. Sin embargo, reconoció que los procesos de transición entre gobiernos municipales tampoco requieren que el Alcalde Entrante cuente con una Certificación de elección. Indicó que existen municipios, como Aguadilla y Maricao, que están en la misma situación ante el surgimiento de controversias similares.

El Comisionado Electoral del Partido Nuevo Progresista (PNP), por su parte, adujo que no hay disposición alguna que impida a la CEE emitir certificaciones preliminares al cerrar la noche del evento electoral o previo a finalizar el escrutinio. Añadió que la CEE tiene facultad para emitir las certificaciones preliminares necesarias para garantizar la sana operación administrativa del gobierno. Señaló que la emisión de este tipo de certificación es esencial para que los procesos administrativos transcurran como corresponde y no se afecten innecesariamente por los procesos electorales.

Por otro lado, el Comisionado Electoral del Partido Independentista Puertorriqueño (PIP), en su *Comparecencia Especial*, argumentó que la Certificación no tiene el efecto

de certificar elección. A esos efectos, adujo que se trata meramente de un anuncio o expresión sobre los resultados electorales. Como consecuencia, señaló que la Certificación a la que se hace referencia no se debía interpretar como una adjudicación final de quién ganó la contienda electoral. Finalmente, el Comisionado Electoral del PIP manifestó que no le incumbe expresarse sobre la aplicabilidad del Art. 2.003 del Código Municipal toda vez que no tiene inherencia en el proceso de transición del Municipio de San Juan.

En sus alegatos, las partes que comparecieron estuvieron de acuerdo con la consolidación de los casos, principalmente por consideraciones de economía procesal.

Con el beneficio de las comparecencias, resolvemos.

II

La solución del caso CT-2020-26 requiere que interpretemos la naturaleza y validez de la Certificación que la CEE emitió el 7 de noviembre de 2020. Ello tiene el propósito de determinar si debió proseguir el proceso de transición en el Municipio de San Juan junto con el candidato potencialmente electo conforme a la información que surge de la Certificación. Asimismo, la controversia en el caso CT-2020-27 versa precisamente sobre la naturaleza y validez de esa Certificación. Como puede notarse, ambos casos contienen cuestiones comunes de hechos y derecho. Conscientes del alto interés público concernido, por consideraciones de economía procesal en un asunto que

requiere certeza y celeridad, **ordenamos la consolidación del caso CT-2020-27 con el caso CT-2020-26**.

Resuelto ese asunto procesal de umbral, procedemos a atender en los méritos las controversias.

III

El *mandamus* es un recurso altamente privilegiado y discrecional, que procede "para exigir el cumplimiento con un deber impuesto por la ley; es decir, de un deber calificado de ministerial". AMPR v. Srio. Educación, ELA, 178 DPR 253, 263 (2010). Un deber es ministerial si se trata "de un mandato específico que la parte demandada tiene que cumplir y que no le permite decidir si cumple o no el acto solicitado". Íd., pág. 264. En cambio, si el acto cuya ejecución se solicita "depende de la discreción o juicio del funcionario, tal deber se considera como no ministerial". Íd. Salvo contadas excepciones, para que proceda el recurso de *mandamus* se requiere que la parte peticionaria demuestre que hizo un requerimiento previo y que este no fue debidamente atendido por el promovido. Noriega v. Hernández Colón, 135 DPR 406, 448 (1994). Asimismo, no procede expedir un recurso de *mandamus* cuando la parte que lo solicita tiene disponible un recurso adecuado y eficaz en el curso ordinario de la ley. Art. 651 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423. Al evaluar si procede conceder este recurso, los tribunales consideran el impacto que podría tener sobre los intereses públicos involucrados, la Rama Ejecutiva y los derechos de terceros. Noriega v. Hernández Colón, supra, pág. 448.

Entre estos, tiene más peso el impacto posible al interés público. Íd.

Es importante recalcar que compete a los tribunales determinar si el deber ministerial surge o no de la ley aplicable; "no depende de un juicio *a priori* fundado exclusivamente en la letra del estatuto". Hernández Agosto v. Romero Barceló, 112 DPR 407, 418 (1982). Además, esa determinación "tiene que surgir del examen y análisis de todos los elementos útiles a la función interpretativa". AMPR v. Srio. Educación, ELA, supra, pág. 264.

IV

**A. Deferencia a las determinaciones de las agencias administrativas**

El Art. 13.1(a) del Código Electoral de 2020 dispone:

(a) En todo recurso legal, asunto, caso o controversia que se presente en un Tribunal de Justicia, est[e] deberá dar prioridad a la deferencia que debe demostrar a las decisiones tomadas por la Comisión a nivel administrativo, siendo esta la institución pública con mayor experti[s]e en asuntos electorales y la responsable legal de implementar los procesos que garanticen el derecho fundamental de los electores a ejercer su voto en asuntos de interés público.

Ese artículo, a su vez, responde al principio de que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Mun. de San Juan v. JCA, 152 DPR 673, 688 (2000); Misión Ind. PR v. JCA, 145 DPR 908 (1998); San Vicente v. Policía de PR, 142 DPR 1 (1996). Ello es así porque éstos cuentan con experiencias y conocimientos altamente especializados sobre los asuntos que se le encomiendan. Rivera Concepción v. ARPe, 152 DPR 116, 123-

124 (2000); Román v. Superintendente de la Policía, 93 DPR 685, 690 (1966).

**B. La certificación preliminar**

El Art. 10.008 del Código Electoral para el Siglo XXI, Ley Núm. 78-2011, ahora derogado (Código Electoral derogado), establecía la manera en que la CEE debía informar a la ciudadanía los resultados del evento electoral. Este disponía que se informarían resultados parciales y preliminares conforme a los tiempos que establecía el artículo. Los resultados parciales se informarían a base de la combinación de los resultados de los colegios de votación al momento de emitir el resultado parcial, mientras que el resultado preliminar surgía de la combinación de todos los resultados de los colegios de votación. A esos efectos, el Art. 2.003 de ese cuerpo legal definía que la "certificación preliminar de elección" era el documento en el cual la CEE informaría preliminarmente el resultado de cualquier elección. 16 LPRA sec. 4003. Así, hasta que se aprobó el Código Electoral vigente el 20 de junio de 2020, la CEE tenía el deber de emitir una certificación preliminar de elección no más tarde de 72 horas después de la elección. Arts. 2.003 y 10.008 del Código Electoral derogado, 16 LPRA secs. 4003 y 4198.

Como se conoce, el 20 de junio de este año se aprobó el Código Electoral de 2020. La nueva legislación cambió la manera en que se ejecutarían varios actos electorales, entre ellos, la forma en que la CEE le informaría a la

ciudadanía los resultados de las elecciones. Distinto a como era en el pasado, el Art. 10.6 del Código Electoral vigente dispone que la CEE informará los resultados en dos anuncios de resultados parciales. Así, el Código Electoral vigente guarda silencio sobre un informe de resultados preliminares como lo contemplaba el Código Electoral anterior. No existe en el Código Electoral actual una disposición expresa que le imponga a la CEE el deber de emitir una certificación de resultados preliminares una vez tenga la combinación de los resultados de todos los colegios de votación. Esa omisión del legislador es lo que dio base a la impugnación de este caso, en la que se cuestiona si la CEE tenía autoridad para emitir una certificación de resultados preliminares bajo el Código Electoral vigente. Para determinar si la actuación de la CEE en este caso fue ilegal o *ultra vires*, debemos analizar la autoridad de la CEE para emitir certificaciones conforme a otras disposiciones de la legislación de referencia.

El Art. 2.3(17) del Código Electoral de 2020 define "certificación" como sigue:

> Determinación, preliminar o final, hecha por la Comisión o sus organismos electorales autorizados en la que aseguran, afirman y dan por cierto en un documento que, luego de su evaluación, el Partido Político por Petición, Aspirante Primarista, Candidato, Candidato Independiente a cargo público electivo o una Agrupación de Ciudadanos han cumplido con todos los respectivos requisitos de esta Ley y sus reglamentos para ser reconocidos como tales dentro de los organismos, procesos y eventos electorales. También constituyen Certificación otros actos legales, administrativos y reglamentarios en que la Comisión o sus organismos electorales autorizados aseguran y afirman en un documento que, luego de su

evaluación, un hecho o documento es cierto y admisible para todo propósito electoral, administrativo o judicial.

Conforme a esta definición, de manera general, la CEE tiene la facultad de emitir un documento de certificación en dos instancias. La primera consiste en recoger las determinaciones -preliminares o finales- de las candidaturas o precandidaturas. Se trata de un proceso pre-eleccionario mediante el cual la CEE asegura que una persona o entidad cumple con los requisitos de Ley para que se le permita participar como aspirante o candidato. En segunda instancia, la CEE tiene facultad para certificar un hecho o documento como cierto y admisible para todo propósito electoral, administrativo o judicial siempre que sea un acto legal, administrativo o reglamentario. Es decir, la CEE tiene autoridad para afirmar, asegurar y dar por cierto hechos que surjan en el proceso eleccionario que se den en virtud de actos legales, administrativos y reglamentarios de la CEE. El oficial responsable de expedir las certificaciones a las que hace referencia el artículo 2.3(17) es el Secretario de la CEE. Art. 3.12 del Código Electoral de 2020.

Por otra parte, la certificación preliminar de los candidatos electos es necesaria para cumplir con otras disposiciones legales que aplican al proceso electoral. Por ejemplo, el Art. 10.8 del Código Electoral de 2020 dispone que "[c]uando el **resultado** parcial o **preliminar** de una elección arroje una diferencia entre dos candidatos a un mismo cargo público electivo de cien (100) votos o menos, o

del punto cinco por ciento (.5%) o menos del total de votos adjudicados para ese cargo, la Comisión realizará un Recuento de los votos emitidos […]". Nótese que el Código Electoral de 2020 reconoce que los resultados que se evaluarán para determinar si procede hacer un recuento son los parciales y **preliminares**, no los resultados del Escrutinio General. También, el Art. 2.094 del Código Municipal de Puerto Rico, Ley Núm. 107-2020, establece que:

> Cuando la Comisión Estatal de Elecciones emita una **certificación preliminar** en la que se determine que un Alcalde incumbente ha sido reelecto quedarán sin efecto las disposiciones de este Artículo a partir de la fecha en que se emita la certificación preliminar. No obstante, si la certificación preliminar arroja una diferencia entre dos (2) candidatos al puesto de Alcalde de cien (100) votos o menos, o de la mitad del uno por ciento (1%) de los votos totales depositados en la urna, dando la posibilidad a que se emita una solicitud de recuento, o esté pendiente de alguna impugnación de la Elección del incumbente, será necesario esperar a que la Comisión Estatal de Elecciones emita una certificación oficial de Elección para poder dejar sin efecto las disposiciones de este Artículo.

Según se aprecia, hay otras leyes que dependen de que la CEE certifique, de manera preliminar y previo a concluir el Escrutinio General, los candidatos que aparentemente fueron electos. Ello con el fin de tener un punto de partida fijo para llevar a cabo otros procesos dispuestos por Ley.

### C. El proceso de transición municipal

El 14 de agosto de 2020 la Asamblea Legislativa aprobó la Ley Núm. 107-2020, conocida como el Código Municipal de Puerto Rico. Entre los asuntos que ese estatuto regula se encuentra el proceso de transición municipal tras la

celebración de unos comicios generales. Este proceso se lleva a cabo con el fin de que el alcalde incumbente que no resulte reelecto en unas elecciones generales haga entrega de la administración del municipio a quien le suceda en el cargo. Por disposición expresa del Artículo 2.001 del Código Municipal de Puerto Rico, el cual regula el proceso de transición, ese proceso tiene un periodo de vigencia. Así, el inciso (b) de ese artículo establece que el proceso de transición "**comenzará el decimoquinto día después de celebradas las Elecciones Generales** y concluirá en o antes del 31 de diciembre del año eleccionario". (Énfasis suplido). Art. 2.001(b) del Código Municipal de Puerto Rico. Además, el inciso (c) establece <u>**la obligación y el deber ministerial**</u> de todos los alcaldes, sus representantes o funcionarios designados de participar del proceso de transición de su municipio. Art. 2.001(c) del Código Municipal de Puerto Rico.

Como parte del proceso transicional, la ley exige que se creen unos comités de transición: el Comité de Transición Saliente y el Comité de Transición Entrante. En cuanto al primero, el estatuto establece que "en todo caso que un Alcalde Incumbente no sea reelecto, se designará un Comité de Transición Saliente para hacer entrega de la administración del municipio a su sucesor en el cargo". Artículo 2.001(d)(1) del Código Municipal de Puerto Rico. Además, de manera cónsona con el inciso que dispone el periodo de vigencia de la transición, establece que ese comité quedará automáticamente constituido el decimoquinto

día después de que se celebren las Elecciones Generales. Íd. En cuanto al segundo comité, la ley establece que "[e]l Alcalde Electo designará un Comité de Transición Entrante e informará por escrito al Alcalde Saliente no más tarde del decimoquinto día después de celebradas las Elecciones Generales". Art. 2.001(d)(3) del Código Municipal de Puerto Rico.

También como parte del proceso de transición, los miembros del Comité de Transición deberán rendir "un informe escrito al Alcalde Electo sobre el estado general de las finanzas y de la administración municipal". Art. 2.001(e) del Código Municipal de Puerto Rico. Además, los Comités deberán llevar a cabo sesiones en formato de vistas públicas, las cuales deberán comenzar en o antes del primero de diciembre del año de elecciones. Art. 2.001(j)(3) del Código Municipal de Puerto Rico. Tanto los medios de comunicación como el público general tendrán acceso a las sesiones y a los documentos de la transición municipal, excepto a aquellos documentos que sean privilegiados o confidenciales. Art. 2.001(k) del Código Municipal de Puerto Rico. Es importante mencionar que, sobre el asunto de la confidencialidad, el inciso (m)(4) del Art. 2.001 del Código Municipal de Puerto Rico establece que "[l]os integrantes del Comité de Transición Entrante suscribirán un acuerdo de confidencialidad en el que garantizarán la no divulgación […] de cualquier información que advenga en conocimiento durante el

desempeño de sus funciones". Art. 2.001(m)(4) del Código Municipal de Puerto Rico.

Por otra parte, el inciso (o) del Art. 2.001 dispone que si la CEE ordena un recuento de los votos para el cargo de Alcalde, "el Proceso de Transición **no se paralizará** y se llevará a cabo **como lo establece este Código**". (Énfasis suplido). Art. 2.001(o)(1) del Código Municipal de Puerto Rico. Añade que, de llevarse a cabo un recuento electoral, el Comité de Transición Saliente quedará constituido y tendrá "**los mismos deberes y obligaciones** como si no se estuviese llevando a cabo un recuento electoral". (Énfasis suplido). Art. 2.001(o)(2) del Código Municipal de Puerto Rico. En cuanto a cuándo procede un recuento electoral, el Art. 10.8 del Código Electoral de 2020 establece que será "[c]uando **el resultado parcial o preliminar de una elección** arroje una diferencia entre dos candidatos a un mismo cargo público electivo de cien (100) votos o menos, o del punto cinco por ciento (.5%) o menos del total de votos adjudicados para ese cargo…". (Énfasis suplido). Art. 10.8 del Código Electoral de 2020. La misma disposición legal establece que, mientras no se culmine el recuento, **no se certificará al ganador de la contienda electoral**. Art. 10.8(3) del Código Electoral de 2020.

Finalmente, es preciso mencionar que el Art. 2.001 del Código Municipal, supra, provee para que el alcalde entrante presente una petición de *mandamus* en el Tribunal de Primera Instancia del distrito judicial al que pertenezca el municipio objeto de la transición cuando el

alcalde saliente o algún otro funcionario designado a participar se niegue a reunirse o cumplir con las disposiciones de ese artículo. Esto tiene el fin de obligar al alcalde saliente o al Comité de Transición Saliente a cumplir con las obligaciones que les impone la ley.

### D. *Reglas de hermenéutica legal*

Una regla de hermenéutica legal conocida es que cuando la ley es clara y libre de ambigüedad su letra no se debe menospreciar con el propósito de cumplir su espíritu. Art. 14 del Código Civil de Puerto Rico, 31 LPRA sec. 14. Sin embargo, cuando una disposición legal o estatuto es ambiguo o posee una laguna, los tribunales debemos interpretarlos más allá de su texto. Alonso García v. SLG, 155 DPR 91, 99 (2001). En esa tarea podrían cobrar preeminencia principios de interpretación como aquel relativo a las leyes *in pari materia*, según el cual las leyes que tratan sobre un mismo asunto o tienen un mismo objeto se deben interpretar en conjunto, haciendo referencia a unas y otras, pues lo que resulte confuso en una se podría suplir con las disposiciones de la otra. Véase Art. 18 del Código Civil de Puerto Rico, 31 LPRA sec. 18. De igual manera, las diversas secciones de un estatuto se deben interpretar conjuntamente y no de manera aislada o fraccionada. Asoc. Fcias v. Caribe Speciality et al., 179 DPR 923, 939-940 (2010). En otras palabras, las leyes se deben considerar como un todo para determinar el significado de cada parte. Íd., pág. 939. Además, es importante tener en cuenta el propósito que persiguió el legislador con el estatuto. Pueblo v. De

Jesús, 70 DPR 37, 42 (1949). Esto es así, pues al realizar un ejercicio de interpretación legal, los tribunales estamos obligados "a armonizar, en la medida posible, todas las disposiciones de ley involucradas en aras de obtener un resultado más sensato, lógico y razonable". Sucn. Álvarez v. Srio. de Justicia, 150 DPR 252, 274 (2000). Cuando la ley es ambigua, debemos rechazar una interpretación literal que conduzca a un resultado que no puede ser el que el legislador intentó producir. Pueblo v. Zayas Rodríguez, 147 DPR 530, 538 (1999). Las leyes se deben interpretar "en comunión con el propósito social que las inspira, sin desvincularlas de la realidad y del problema humano que persiguen resolver". Íd., pág. 537 (citando a Col. Ing. Agrim. P.R. v. AAA, 131 DPR 735, 756 (1992)).

V

A.

En primer lugar, nos corresponde evaluar si la CEE actuó de forma ilegal o *ultra vires* al emitir la Certificación de 7 de noviembre de 2020 en la que informó el resultado preliminar de la contienda electoral para la alcaldía del Municipio de San Juan. El Comisionado Electoral de MVC alega que la certificación en controversia se emitió de forma *ultra vires* toda vez que el Código Electoral de 2020 solamente contempla informar los resultados de la elección en: (1) un primer anuncio parcial, (2) un segundo anuncio parcial, y (3) una Certificación de Elección una vez culmine el Escrutinio

General. Sostiene que el Código Electoral de 2020 no faculta a la CEE a emitir certificaciones preliminares.

Por su parte, el Presidente de la CEE arguye que el Art. 2.3(17) del Código Electoral de 2020 autoriza a la CEE a asegurar, validar y dar por ciertos hechos con relación a asuntos electorales. Por tanto, tiene autoridad para expedir certificaciones parciales y preliminares. Enfatiza que la CEE no solo está autorizada, sino que tiene la responsabilidad de hacerlo, pues debe cumplir otras disposiciones legales que dependen de las certificaciones preliminares que emite la agencia.

Según se expuso en la sección anterior, el Código Electoral derogado le imponía expresamente a la CEE el deber de certificar preliminarmente los resultados de la elección. No obstante, al promulgar el Código Electoral del 2020, el legislador omitió requerir que la CEE informara los resultados preliminares de la elección mediante certificación. Cónsono con ello, el Código Electoral de 2020 eliminó de sus definiciones el concepto de "certificación preliminar de elección". **Lo anterior solo revela que el Código Electoral de 2020 <u>no obliga</u> a la CEE a <u>certificar preliminarmente</u> a algún candidato, en el sentido en que se disponía en el Código Electoral derogado.** Ahora bien, contrario a lo que expone el Comisionado Electoral de MVC, **la ausencia de esa**

**obligación no significa que la CEE está impedida de hacerlo**.[4]

Surge del Código Electoral de 2020 que la CEE está autorizada a emitir distintos tipos de certificaciones. Como vimos, el Art 2.3(17) del Código Electoral de 2020, le concede a la CEE autoridad para certificar ciertos hechos que suceden a raíz del proceso electoral. En particular, la CEE puede validar, asegurar y dar por cierto un hecho en un documento siempre que esté relacionado con un asunto electoral y sea un acto legal, administrativo o reglamentario. Esta disposición es bastante amplia y se fundamenta en la pericia de la agencia en el manejo de los procesos electorales. Asimismo, hay otras disposiciones legales vinculadas al proceso electoral cuyo cumplimiento depende de que la CEE emita certificaciones preliminares. Por ejemplo, los resultados preliminares son necesarios para iniciar el Escrutinio General o determinar si procede llevar a cabo un recuento conforme al Art. 10.8. Además, según se expuso, el Artículo 2.094 del Código Municipal de Puerto Rico contiene disposiciones relacionadas con las finanzas

---

[4] Nótese que el Art. 10.6 del Código Electoral de 2020 instruye a la CEE a emitir dos anuncios de resultado parcial —en los términos allí expuestos— e impone el deber de incluir un texto en el que se indica que esos anuncios no constituyen un resultado final y oficial, o la proyección de uno, pues ese solo será el que se anunciará al finalizar el Escrutinio General. Nótese que el Art. 10.6 no prohíbe que la Comisión anuncie o certifique resultados parciales o preliminares adicionales a los que contempla el estatuto. Lo que indica es que, para propósitos de esos anuncios, **no se puede interpretar que ese resultado es el resultado definitivo de la contienda electoral**. Es decir, su propósito es aclarar que esos anuncios no se equiparan con la Certificación de Elección —según se define en el Art. 2.3(18), que se emite una vez se realiza y completa el Escrutinio General o recuento, según aplique.

municipales -que operan particularmente en años eleccionarios- cuya aplicabilidad depende de la certificación de resultados preliminares que la CEE emita.

La CEE emitió la Certificación en controversia con el propósito de afirmar cuál era el resultado preliminar de la contienda por la Alcaldía de San Juan. Su finalidad fue comenzar el Escrutinio General y evaluar si correspondía realizar un Recuento. En el referido documento se aclaró que:

> Esta certificación no conlleva la certificación formal o informal de ningún candidato. Una vez se efectúe el Escrutinio General (Art. 10.7) y el Recuento (Art. 10.8) que establece el Código Electoral de Puerto Rico de 2020, la Comisión declarará debidamente electo para el cargo antes mencionado al candidato que reciba la mayor cantidad de votos y como constancia de ello, expedirá el correspondiente certificado de elección.

Por lo tanto, se certificó verdaderamente un resultado preliminar y no final, que puede o no ser distinto una vez se complete el Escrutinio General. En ese sentido, lo que la CEE hizo fue plasmar en un documento e imprimirle validez a ese hecho. Sin duda, esta es una facultad que el Código Electoral de 2020 le confirió a la agencia al permitirle certificar aquellos hechos que surjan de asuntos electorales.

Conforme con lo anterior, concluimos que la CEE actuó dentro de sus facultades y de su autoridad al expedir certificaciones preliminares en virtud de las cuales validen el hecho de quién es el candidato electo aparente. Lo anterior permite que se puedan ejecutar un sinnumero de

actos relacionados al proceso electoral que por mandato de ley se deben realizar en determinados plazos. Por lo tanto, resolvemos que la Certificación de resultados preliminares que se emitió es válida y que la CEE no actuó de forma ilegal o *ultra vires* al emitirla. Por todo lo anterior, se confirma la Resolución CEE-RS-20-166 que emitió el Presidente de la CEE.

B.

Aclarada la facultad de la CEE para emitir certificaciones preliminares sobre los resultados de los comicios generales, debemos resolver si, a la luz de lo que estas arrojan, el candidato que figura como potencial candidato electo está legitimado para presentar una petición de *mandamus* a los fines de obligar que se proceda con un proceso de transición municipal.

En torno a esta controversia, la alcaldesa Cruz Soto argumenta que el Código Municipal de Puerto Rico establece como un elemento indispensable para que el proceso transicional se lleve a cabo el que exista un "alcalde electo". Basándose en el principio *in pari materia*, argumenta que ese concepto se debe interpretar conforme a lo que establece el Código Electoral de 2020. A esos fines, expone que, según el Código Electoral vigente, ningún candidato puede ser declarado electo sino hasta que culmine el Escrutinio General. Sostiene que, como eso no ha sucedido aún, no se ha activado su deber ministerial como Alcalde Saliente de realizar el proceso de transición, por lo que la petición de *mandamus* resulta prematura. En esa

misma línea, argumenta que resulta cuestionable la legitimación del señor Romero Lugo para interponer esa petición, pues solo el candidato electo posee tal legitimación. Por su parte, el señor Natal Albelo esboza planteamientos similares.

Ciertamente, el artículo que regula el proceso de transición municipal hace referencia en instancias múltiples al "Alcalde Entrante" y al "Alcalde Electo" al aludir a la persona que debe participar del proceso transicional. Sin embargo, el estatuto no define esos términos, por lo cual resulta incierto qué significan en ese contexto. Tanto la alcaldesa Cruz Soto como el señor Natal Albelo proponen llenar ese vacío mediante la equiparación de esos términos con lo que constituye un candidato electo bajo el Código Electoral de 2020. No obstante, una lectura integrada de las secciones diversas del Art. 2.001 del Código Municipal, supra, revelan que esa interpretación no puede prevalecer.

Por un lado, a pesar de que el Artículo 2.001 del Código Municipal de Puerto Rico hace referencia al concepto "Alcalde Electo", este establece una fecha fija para iniciar el proceso de transición. A su vez, lo anterior no sujeta el inicio de ese proceso a que medie una Certificación de Elección final de la CEE sobre quién es el candidato que ganó la contienda electoral. Simple y llanamente el artículo establece que el proceso comenzará el decimoquinto día después de celebrarse las Elecciones Generales. Esto revela la intención del legislador de que

el proceso de transición comience en una fecha certera y cercana a la celebración de las Elecciones Generales. Asimismo, revela que la intención no es que el proceso de transición comience una vez culmine el Escrutinio General, pues como ha pasado anteriormente y según ocurre en estas elecciones, el escrutinio no siempre se realiza y culmina en 15 días. **Lo anterior implica que el proceso de transición comenzará con suficiente anticipación para que pueda culminar antes del 31 de diciembre del año eleccionario.**

Por otra parte, es importante señalar que el inciso (o) del Art. 2.001 del Código Municipal de Puerto Rico establece que el proceso de transición debe iniciar y no se paralizará en el supuesto de que la CEE ordene un recuento electoral. Esto resulta de particular importancia a esta controversia, pues, como vimos previamente, la celebración de un recuento conlleva que no se certifique un candidato como "electo" hasta que culmine el recuento. Art. 10.8 del Código Electoral de 2020. En otras palabras, la existencia de un recuento electoral implica necesariamente que no habrá un candidato certificado como electo hasta que el recuento culmine. Por lo tanto, no tendría lógica interpretar y concluir que el Código Municipal de Puerto Rico exige que exista un candidato certificado finalmente como el candidato electo definitivo para que el proceso de transición inicie. Esa interpretación no sería cónsona con la intención legislativa clara e inequívoca de que: (1) el proceso de transición comience el decimoquinto día luego de

los comicios generales, y (2) no se interrumpa incluso cuando no se haya certificado a un candidato como electo y, por consiguiente, el resultado de la contienda electoral pudiese variar tras un recuento de los votos.

Así, la interpretación que armoniza el texto del estatuto, sus diversas secciones y el propósito que el legislador persiguió al adoptarlo es que no es un requisito para iniciar el proceso de transición que la CEE haya certificado como electo a un candidato de manera final y definitiva. Por el contrario, es suficiente con que medie una certificación preliminar de los resultados electorales donde un candidato se proyecte como aquel potencialmente electo. Esto es así para poder llevar a cabo una transición ordenada y con tiempo de los asuntos gubernamentales.

Finalmente, es preciso atender el argumento de la alcaldesa Cruz Soto de que comenzar el proceso de transición sin que se haya certificado un candidato electo conlleva el riesgo de que información confidencial y privilegiada del municipio pase a manos de una persona que podría no resultar ser el ganador verdadero. Primero, conviene resaltar que el proceso de transición y la documentación que se comparte durante este son, como regla general, públicos. Así lo establece expresamente el Código Municipal de Puerto Rico. Segundo, aunque indudablemente podría existir información confidencial que se comparta durante el proceso, esto fue un supuesto que el legislador contempló al establecer que el proceso de transición debe proseguir, aun en la eventualidad de que proceda un

recuento de votos. Nótese que en esas instancias cabe la posibilidad de que, culminado el recuento, el candidato con quien se compartió la información confidencial no resulte electo finalmente. No obstante, la Asamblea Legislativa no lo consideró un obstáculo para llevar a cabo el proceso de transición. Tercero, precisamente por el riesgo de que se compartiera información privilegiada o confidencial obtenida en el proceso de transición, el legislador dispuso que "[l]os integrantes del Comité de Transición Entrante suscribirán un acuerdo de confidencialidad en el que garantizarán la no divulgación […] de cualquier información que advenga en conocimiento durante el desempeño de sus funciones". Art. 2.001(m)(4) del Código Municipal de Puerto Rico. Además, la alegación de que la información confidencial obtenida podría generar un estado de ventajas indebidas y mal uso de la información municipal interna es especulativa y no puede servir de base para adoptar una interpretación que es, a todas luces, contraria al texto, según aclarado, espíritu e intención del estatuto.

En este caso, la CEE emitió una certificación de los resultados preliminares de la contienda electoral por la alcaldía del Municipio de San Juan. De esta surge que, al momento de emitirse, el señor Romero Lugo tenía una ventaja en el número de votos que recibió del electorado en contraste con los demás candidatos al cargo. Conforme a lo que establecimos previamente, ello era suficiente para que el proceso de transición municipal comenzara. Esto también era suficiente para que el señor Romero Lugo, aunque no ha

sido certificado como candidato electo de manera definitiva, estuviese legitimado para participar en el proceso de transición municipal. Así también, le confería la potestad de solicitar, mediante una petición de *mandamus*, que se requiriera a la alcaldesa incumbente comenzar el proceso de transición con él. Por consiguiente, aclarada la validez de la Certificación que emitió la CEE y ante el hecho de que la alcaldesa Cruz Soto no ha cumplido con su deber ministerial de iniciar con el proceso de transición junto al señor Romero Lugo, la petición de *mandamus* que este presentó procede en derecho.

Es menester señalar que la determinación que hoy emitimos aclara y uniforma —de manera definitiva— la normativa que debe regir para iniciar los procesos de transición. Se ha traido a nuestra atención que existen otros municipios que se encuentran enfrentando situaciones similares a la de San Juan, ante la falta de disposiciones claras que sirvieran de base para iniciar los procesos de transición. Resolvemos que estos deben acatar lo que disponemos aquí y comenzar de igual forma el proceso de transición. Nada de lo aquí resuelto tendrá el efecto de afectar el proceso de escrutinio y certificación final del alcalde electo, los cuales deben seguir su curso según dispone la normativa aplicable.

VI

A raíz de lo anterior, se declara con lugar la solicitud

de *mandamus* que presentó el Hon. Miguel A. Romero Lugo. En consecuencia, se le ordena a la alcaldesa del Municipio de San Juan, Hon. Carmen Yulín Cruz Soto, a comenzar inmediatamente el proceso de transición con la participación del comité que designó el Hon. Miguel A. Romero Lugo.

Se dictará Sentencia de conformidad.

                                        Maite D. Oronoz Rodríguez
                                             Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Hon. Miguel A. Romero Lugo, actual Senador del Distrito I de San Juan y como Alcalde Electo del Municipio de San Juan<br><br>    Peticionario<br><br>       v.<br><br>Hon. Carmen Yulín Cruz Soto como Alcaldesa Saliente del Municipio de San Juan<br><br>    Recurrida<br><br>Manuel Natal Albelo, como candidato a la Alcaldía del Municipio de San Juan<br><br>    Parte interventora<br>_____<br><br>Olvin A. Valentín Rivera, como Comisionado Electoral del Partido Movimiento Victoria Ciudadana<br><br>    Peticionario<br><br>      v.<br><br>Comisión Estatal de Elecciones, a través de su Presidente, Francisco J. Rosado Colomer; Roberto Iván Aponte Berríos, como Comisionado Electoral del Partido Independentista Puertorriqueño; Héctor J. Sánchez Álvarez, como Comisionado Electoral del Partido Nuevo Progresista; Gerardo A. Cruz Maldonado, como Comisionado Electoral del Partido Popular Democrático; y, Juan Frontera Frau, como Comisionado Electoral del Partido Proyecto Dignidad<br><br>    Peticionados | CT-2020-26 cons. con CT-2020-27 | *Certificación Intrajurisdiccional* |

SENTENCIA

En San Juan, Puerto Rico, a 25 de noviembre de 2020.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, (1) se ordena la consolidación del CT-2020-27 con el CT-2020-26, (2) se confirma la Resolución CEE-RS-20-166 y (3) se declara con lugar la solicitud de *mandamus* que presentó el Hon. Miguel A. Romero Lugo. En consecuencia, se le ordena a la alcaldesa del Municipio de San Juan, Hon. Carmen Yulín Cruz Soto, a comenzar inmediatamente el proceso de transición con la participación del comité que designó el Hon. Miguel A. Romero Lugo.

**Notifíquese inmediatamente por teléfono y por correo electrónico.**

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García emitió la siguiente expresión de conformidad:

> "Durante los pasados días este Tribunal ha tenido que dar un paso al frente ante el intento injustificado y frívolo de determinados funcionarios que, al margen de ley, han intentado detener los procesos electorales durante el mes de noviembre. Esta ocasión no es la excepción. Aun cuando los estatutos pertinentes son claros, nos enfrentamos al escenario de una Alcaldesa Saliente, Hon. Carmen Yulín Cruz Soto (honorable Cruz Soto), que se antepone a la democracia al negarse a llevar a cabo el Proceso de Transición establecido en el Art. 2.001 del Código Municipal de Puerto Rico (Código Municipal), Ley Núm. 107-2020, en http://www.bvirtual.ogp.pr.gov/ogp/Bvirtual/leyesr eferencia/PDF/107-2020.pdf. Ello, incluso, con la posible consecuencia de afectar la continuidad de los servicios a las personas que durante su incumbencia está obligada a brindar.
>
> Cónsono con lo anterior, al amparo de la misma facultad que ejercimos hace varios días en

Valentín Rivera v. Comisión Estatal de Elecciones, 2020 TSPR __ (CT-2020-0024; CT-2020-0025), de a iniciativa propia certificar intrajurisdiccionalmente casos que están pendientes ante el Tribunal de Primera Instancia, también validamos la Certificación preliminar emitida por la Comisión Estatal de Elecciones (CEE) sobre el cargo de Alcalde Electo del Municipio de San Juan. Véanse: Art. 3.002(f) de la Ley de la Judicatura de Puerto Rico de 2003, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24s(f); Regla 52.2(d) de Procedimiento Civil, 32 LPRA Ap. V.

Para la resolución de estas controversias bastó aplicar varios principios básicos de hermenéutica legal, pues la letra clara de la ley, así como un examen integral de los estatutos pertinentes, no permiten llegar a una conclusión distinta. A esos efectos, de entrada, debemos exteriorizar los numerosos tropiezos de carácter fatal que enfrentan quienes defienden la teoría que supone que para comenzar el Proceso de Transición hace falta una certificación final que declare al ganador indiscutible de la contienda electoral por la alcaldía del Municipio de San Juan.

**En primer lugar**, es innegable que el Código Municipal, *supra*, dispone de forma diáfana un límite temporal para constituir el Comité de Transición Saliente y el Comité de Transición Entrante. Pero no sólo se impone esta obligación, sino que, de forma separada, el estatuto establece sin ambages qué día tiene que comenzar el Proceso de Transición municipal, a saber: quince días después de las elecciones. Art. 2.001 del Código Municipal, *supra*.

**Segundo** ──y atado al primer punto── es de notar que el Código Municipal no menciona que debe emitirse una Certificación de Elección para comenzar el proceso en controversia. Es decir, no se dispone en ninguna parte que debe culminarse el Escrutinio General o Recuento para que se pueda iniciar el Proceso de Transición.

Precisamente, **como tercer punto**, debemos resaltar que en los casos de recuentos de votos tampoco se emiten certificaciones finales mediante las cuales se declaran electos los candidatos sujetos al recuento. La certificación que declara quiénes fueron electos de forma definitiva ──denominada en el Código Electoral de Puerto Rico

de 2020 (Código Electoral), Ley Núm. 58-2020, en http://www.bvirtual.ogp.pr.gov/ogp/Bvirtual/leyesr eferencia/PDF/58-2020.pdf, como la "Certificación de Elección"—— se emite luego de que **culmine** el proceso de Escrutinio General o Recuento, de ser necesario este último. Precisamente, el Código Electoral define Certificación de Elección como el "[d]ocumento donde la [CEE] declara electo a un candidato a un cargo público electivo o el resultado de cualquier elección, **después** de un escrutinio general **o recuento**". (Énfasis y subrayado suplido). Íd., Art. 2.3(18). Esto es, si el cargo en particular amerita un Recuento, la referida certificación final no se emite para ese cargo electivo hasta tanto se termine con el proceso de recontar los votos emitidos. Así pues, donde se descubre que la diferencia es equivalente o menor al 0.5% culminado el Escrutinio General, lo que se emite realmente es una determinación preliminar que se corrobora luego de ese proceso. Véase Íd., Art. 10.8.

En esa dirección, quienes arguyen que hace falta esta Certificación de Elección pierden de perspectiva que el Art. 2.001 del Código Municipal, *supra,* no sólo reconoce que el Proceso de Transición comienza en determinada fecha, sino que surge manifiestamente que este proceso es posible antes de que se lleve a cabo un Recuento. Incluso, la ley aclara cómo se lleva a cabo el Proceso de Transición **mientras** se lleva a cabo el recuento de votos. Así, el estatuto vislumbra expresamente un escenario en el cual no existe aún la Certificación de Elección, pero el Proceso de Transición debe comenzarse y continuarse de conformidad con el periodo establecido para ello en el mismo estatuto. Ello, a tal punto que se establece de forma manifiesta que ni en casos de Recuento se justificaría paralizar o interrumpir el Proceso de Transición.

En ese sentido, ante el marco estatutario pertinente, resulta inconcebible concluir que la CEE no tiene la facultad de emitir certificaciones preliminares con el fin de **acreditar** que determinado candidato es el potencial funcionario público electo. Precisamente, el Proceso de Transición es un trámite administrativo y público que hace indispensable que se emita la certificación donde se afirma o asegura preliminarmente el hecho de que en ese momento determinado candidato ha obtenido la mayoría de los votos. Véase Art. 2.3 del Código Electoral, *supra.* De ese modo, se le confiere legitimación al

candidato que lleva la ventaja para exigir que se cumpla con el periodo de vigencia del Proceso de Transición, así como los efectos que se establecen otros estatutos relevantes.

En definitiva, no cabe duda de que el Proceso de Transición comienza en una fecha dispuesta en la ley, por lo que deben emitirse certificaciones preliminares en algún momento previo a que se cumpla el término establecido. Así se hizo con los resultados preliminares en estas Elecciones Generales.[5]

El deber de comenzar con el Proceso de Transición no se cumple con la mera designación del Comité de Transición Saliente, como pareció señalar la honorable Cruz Soto. En efecto, se tiene que comenzar el referido proceso, según demarcado específicamente en el Art. 2.001 del Código Municipal, *supra*. Así las cosas, estoy **conforme** con la Opinión que emite en el día de hoy este Tribunal".

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

---

[5] El Proceso de Transición del Gobierno Central debía comenzar el 7 de noviembre de 2020, día en que se emitieron las Certificaciones Preliminares de los candidatos, incluyendo la certificación del Hon. Miguel A. Romero Lugo.